# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| SHARMELL ALLEN, | ) | |
| --- | --- | --- |
| PLAINTIFF, | ) | |
| v. | ) | Civil Action No. 09-1508 |
| | ) | Judge Alan N. Bloch |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| DEFENDANT. | ) | |
| | ) | |

## MEMORANDUM OPINION

### I. Introduction

Plaintiff, Sharmell Allen ("Allen") brings the present action under 42 U.S.C. § 405(g), seeking review of the Commissioner of Social Security's ("Commissioner's") final decision denying her claims for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("Act"). 42 U.S.C. §§ 401-433, 1381-1383f. The parties have filed cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure 56, and the record has been developed at the administrative level. For the reasons that follow, Allen's Motion for Summary Judgment (Doc. No. 12) will be denied, the Commissioner's Motion for Summary Judgment (Doc. No. 14) will be granted, and the Commissioner's decision will be affirmed.

### II. Procedural History

Allen protectively filed applications for DIB and SSI on September 20, 2007, alleging disability as of April 1, 2007. R. at 9, 27, 87-99. The applications were administratively denied on December 5, 2007. R. at 71-78. Upon Allen's timely request, a hearing was held in Pittsburgh, Pennsylvania, on April 24, 2009, before Administrative Law Judge Anne W. Chain

("ALJ"). R. at 18-51. Allen, who was represented by an attorney, appeared and testified. R. at 22-42. Steven Kessler, an impartial vocational expert ("VE") also testified. R. 43-50.

On July 14, 2009, the ALJ issued a decision finding that Allen was not "disabled" within the meaning of the Act. R. at 9-17. The Appeals Council denied Allen's request for review on September 25, 2009, thereby making the ALJ's decision the final decision of the Commissioner in this case. R. at 1-5. Allen commenced the present action on November 12, 2009, seeking judicial review of the Commissioner's decision. Doc. Nos. 1 & 3. Allen and the Commissioner filed motions for summary judgment on April 9, 2010 and May 7, 2010, respectively. Doc. Nos. 12 & 14. The case was assigned to Magistrate Judge Amy Hay. On November 1, 2010, Chief Judge Lancaster issued an order referring the case back to this Court. The party's cross-motions for summary judgment are the subject of this memorandum opinion.

### III. Statement of the Case[1]

On June 4, 2007, Allen sought treatment at the University of Pittsburgh Medical Center ("UPMC") Braddock for an allergic reaction to cereal. R. at 170-186. During this admission it was noted without further detail that Allen had a "headache, unspecified." R. at 170. On September 5, 2007, Allen was admitted to UPMC Presbyterian Shadyside after she complained of migraines. R. at 221. A CT scan of Allen's head was "negative" and showed "no acute intracranial hemorrhage or mass effect." R. at 213, 222. An MRI of Allen's brain was "unremarkable." R. at 213. A brain MRA showed atherosclerotic irregularity of anterior circulation. *Id.* Allen was treated with various medications including Dilaudid and Zofran. *Id.*

---

[1] Because Allen only alleges that the ALJ erred in the analysis of her migraine headaches, the remainder of this memorandum opinion will focus on evidence related to Allen's history of migraines.

2

She was "contraindicated to triptans[2] because of uncontrollable hypertension." *Id.* Allen's September 15, 2007, discharge summary noted that her "migration seemed to be related to her anxiety and depressed mood." R. at 213.

Laksani Reddy, M.D. completed a Pennsylvania Department of Public Welfare "Employability Assessment Form" in conjunction with Allen's hospitalization. R. at 242-243. She indicated that Allen was "temporarily disabled-less than 12 months." R. at 243. Dr. Reddy specified that Allen's disability began September 4, 2007, and was expected to last until March 4, 2008. *Id.*

Allen began seeing Robert Kaniecki, M.D., director of UPMC's Headache Center, on January 3, 2008. R. at 255-56. Allen reported to Dr. Kaniecki that she had "ten headache days per month with seven being severe/incapacitating." R. at 255. Allen reported that there were not any triggers. *Id.* Upon examination, Allen was found to be in the midst of a migraine which was causing her to be photophobic and nauseated. *Id.* Allen was treated with Ketorolac, Reglan, and Imitrex/Sumatriptan and "improved noticeably." R. 256. Dr. Kaniecki found Allen's neurological examination to be "completely benign." *Id.* He recommended a number of natural/lifestyle measures and that she discontinue Percocet and other analgesics. *Id.* Dr. Kaniecki initiated prescriptions for Topamax, Reglan, and Imitrex. *Id.*

Dr. Kaniecki examined Allen again on March 7, 2008. R. at 254. Allen complained of fifteen headaches a month, twelve of which she reported were incapacitating. *Id.* Allen's medication list did not include Imitrex. *Id.* Dr. Kaniecki noted that Allen was "not working

---

[2] Triptans are defined as "any of a class of drugs that act as agonists of serotonin, result in cranial vasoconstriction, and are used for the prophylaxis and treatment of migraine headaches." The American Heritage Medical Dictionary (Houghton Mifflin Company 2007).

3

because of mood." *Id.* Dr. Kaniecki referred Allen to a psychiatrist for evaluation and treatment. *Id.*

Srihari Bangalore, M.D., examined Allen on April 8, 2008. R. at 384. Dr. Bangalore noted that Allen was unemployed due to "depression and migraines", but did not describe the migraine's frequency or severity. R. at 384-87. Allen was noted to be taking Topamax for her migraines. R. at 384. Allen's psychological therapy sessions at UPMC Western Psychiatric Institute from May 2008 through August 2008 includes notations of her migraines as: a single headache in May 2008; five days of headaches in June 2008; and two days of headaches in July 2008. R. at 324, 328, 337-40, 345-47, 364.

On June 10, 2008, H. Ronald Berk, M.D., reported that Allen had "been doing fairly well with her headaches" and that she had "about five [headaches] a month." R. at 398. Allen's prescription for Topamax was continued and she was instructed to "hold off on Imitrex until cleared by cardiology." *Id.* On June 12, 2008, Dr. Kaniecki reported that Allen's condition had improved since his last report and that she was experiencing four days of headaches a month, none of which were described as severe or incapacitating. R. at 253. Dr. Kaniecki continued Allen's prescriptions for Topamax and Reglan. *Id.*

On November 7, 2008, Allen was admitted to UPMC Presbyterian Shadyside for a migraine headache. R. at 444. Allen told emergency room physician, Heather Tassone, D.O., that she had headaches "every now and then", usually one to two a month. R. at 447, 452. Allen indicated that her headaches were "not as severe" as her current migraine which she rated a "10/10" in severity. R. at 413. Allen indicated that she was not on any medications at the time but that her migraines usually went away with pain medications and Compazine for nausea. R. at 444, 452. Allen also indicated that she was unable to take any triptans due to hypertension

4

associated with the class of medications. R. at 444. A CT scan of Allen's head did not show any acute intracranial findings. R. at 445. There was "some mid bilateral maxillary sinus mucosal swelling." *Id.* Dr. Tassone noted that she believed Allen's discomfort to be "somewhat embellished." R. at 453.

Allen's Dilaudid and Topamax were continued and she was transferred to Western Pennsylvania Hospital the next day. R. at 413, 454. Allen told Felicia Young, M.D., that she had approximately two migraines per month. R. at 413. Allen relayed that her migraines were less severe and were typically relieved with Percocet. *Id.* A CT scan of Allen's head revealed "no acute intracranial abnormality." R. at 415. Allen was treated with Dilaudid and Ativan and discharged on November 11, 2008. R. at 410. Her discharge medications were Labelaiol, Celexa, Procardia, Topamax, Percocet, and Ativan. *Id.*

On December 9, 2008, Allen returned to Western Pennsylvania Hospital and was admitted due to "right facial pain, lightheadedness and syncope associated with some heaviness in the legs." R. at 419. Anduradha Gowda, M.D., noted Allen's history of migraines and that they "appear to be stable at this present time." R. at 422. Allen did not receive any significant treatment for headaches before she was discharged on December 11, 2008. R. at 419-39.

In March 2009, consultative physician, R. Curtis Waligura, D.O., examined Allen and completed a report and assessment of her ability to perform work activities. R. at 286-93. Allen told Dr. Waligura that she had one to two bad headaches a week and that she took Percocet to treat her migraine pain. R. at 286. Allen relayed that her headaches seemed to be aggravated and increased by loud noises and bright light. R. at 286. Dr. Waligura concluded that Allen could lift ten pounds occasionally and ten pounds frequently and occasionally climb, kneel, crouch, stoop, balance, and crawl. R. at 290-91. Dr. Waligura did not assess any limitations in

5

Allen's ability to sit, stand, or walk. R. at 291. He opined that Allen should avoid exposure to noise. R. at 292.

At the hearing before the ALJ on April 24, 2009, Allen testified that she did not believe that she could work because of her migraines, depression, and anxiety. R. at 27. Allen stated that she was in the hospital six times a year. R. at 28. She testified that none of her medications had proven helpful and that she usually has migraines "between four and five days a month" lasting "anywhere from four to eight to nine hours." R. at 29. Allen testified that noise bothered her. R. at 34. Her medications at the time of the hearing were Percocet and Topamax. R. at 30.

## IV.    **Standard of Review**

This Court's review is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190-1191(3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically

6

determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Sec'y of Health & Human Serv.*, 841 F.2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. *Stewart v. Sec'y of Health, Educ. & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively delegated rule-making authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court summarized this process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity."[20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§

7

404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (footnotes omitted).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In *Sec. & Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194 (1947), the Supreme Court explained:

When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

*Chenery Corp.*, 332 U.S. at 196.

The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision.

V. **The ALJ's Decision**

In her decision, the ALJ determined that Allen had not engaged in substantial gainful activity subsequent to her alleged onset date. R. at 11. Allen was found to be suffering from chronic low back pain syndrome, migraine headaches, hypertension, major depressive disorder, anxiety disorder, and alcohol dependence. *Id.* Although these impairments were deemed to be "severe" within the meaning of 20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii), they did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listing of Impairments" or, with respect to a single impairment, a "Listed Impairment" or "Listing"). R. at 11-12.

In accordance with 20 C.F.R. §§ 404.1545 and 416.945, the ALJ assessed Allen's residual functional capacity as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work. This range of work is reduced by the need to avoid exposure to moving machinery, unprotected heights, or loud noises; a limitation to short, simple instructions; and an inability to do any but simple routine tasks[3]. R. at 12.

Allen was born on October 26, 1958, making her 46 years of age as of her alleged onset date and fifty years of age as of the date of the ALJ's decision. R. at 15. She was classified as a "younger individual" on her alleged onset date and as an individual "closely approaching advanced age" on the date of the ALJ's decision. R. at 15, 20 C.F.R. §§ 404.1563, 416.963. Allen had a high school education and the ability to communicate in English. R. at 16. Given

---

[3] The ALJ asked the VE whether any jobs in the national economy could be performed by a hypothetical individual of the same age, education, and work experience as Allen, who was able to lift twenty pounds occasionally and ten pounds frequently, who could stand or walk for up to six hours in an eight-hour day but needed a sit/stand option; who could occasionally climb, stop, kneel, balance, crouch and crawl; who must avoid hazards, such as heights or dangerous machinery, and have no exposure to loud noise; and who could perform only simple, routine tasks with short, simple instructions. R. at 44-47. This hypothetical was more restrictive than the ALJ's residual functional capacity determination.

9

the applicable residual functional capacity ("RFC") and vocational assessments, the ALJ determined that Allen could not return to her past relevant work as a nursing assistant, cashier, or stock clerk. R. at 15. Nevertheless, she concluded that Allen could perform the requirements of the representative occupations of a packer, assembler, and production inspector. R. 16. The VE's testimony established that these jobs existed in the national economy for the purposes of 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B). R. at 47-48.

## VI. Discussion

In support of her Motion for Summary Judgment (Doc. No. 12), Allen argues that the ALJ failed to consider functional limitations that resulted from her migraine headaches and therefore, that the ALJ relied on an inaccurate hypothetical question to the VE and an incomplete and improper RFC assessment. Doc. No. 13, 6. The Commissioner argues that the ALJ's decision is supported by substantial evidence and consistent with the medical evidence of record, including Allen's reports to her physicians. Doc. No. 15, 8.

Allen specifically alleges that when she is having a headache she is "unable to perform any activities at all." Doc. No. 13, 15. Therefore, she argues that the ALJ's hypothetical question to the VE and the resultant RFC assessment was deficient because they failed to include the limitation that her headaches would cause her to miss at least one day of work per month. *Id.* However, the ALJ's decision not to include such a limitation is supported by substantial evidence.

In order for the Court to find a hypothetical question was based on substantial evidence, the "hypothetical question must reflect all of the claimant's impairments that are supported by the record." *Chrupcala v. Heckler*, 829 F.2d, 1276 (3d Cir.1987). Indeed, "the vocational expert's testimony concerning a claimant's ability to perform alternative employment may only

10

be considered for purposes determining disability if the question accurately portrays the claimant's individual physical and mental impairments." *Podedworny v. Harris*, 745 F.2d 210, 210 (3d Cir.1984). Where a hypothetical question to the VE accurately sets forth all of a claimant's significant impairments and restrictions in activities, physical and mental, as found by the ALJ or as uncontradicted on the medical record, the expert's response as to the existence of jobs in the national economy which the claimant is capable of performing may be considered substantial evidence in support of the ALJ's findings on claimant's RFC. *See, Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002) *citing Podedworny*, 745 F.2d at 218 and *Chrupcala*, 829 F.2d at 1276[4]. *See also Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999) (factors to be considered in formulating hypothetical questions include medical impairments, age, education, work experience and RFC); *Boone v. Barnhart*, 353 F.3d 203, 205-06 (3d Cir. 2003) ("At the fifth step of the evaluation process, 'the ALJ often seeks advisory testimony from a vocational expert.' ").

Although the hypothetical question must include all of claimant's physical and mental impairments, the United States Court of Appeals for the Third Circuit does "not require an ALJ to submit to the vocational expert every impairment alleged by the claimant. Rather, the hypothetical posed must accurately portray the claimant's impairments and the expert must be given an opportunity to evaluate those impairments as contained in the record." *Johnson v. Commissioner*, 529 F.3d 198, 206 (3d Cir. 2008)(citing *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005) (internal quotations omitted). Objections to the adequacy of an ALJ's

---

[4] Conversely, because the hypothetical question posed to a vocational expert "must reflect all of a claimant's impairments," *Chrupcala*, 829 F.2d at 1276, where there exists on the record "medically undisputed evidence of specific impairments not included in a hypothetical question to a vocational expert, the expert's response is not considered substantial evidence." *Podedworny*,745 F.2d at 218.

hypothetical questions to a vocational expert "often boil down to attacks on the RFC assessment itself." *Rutherford*, 399 F.3d at 554 n. 8.

Allen does not identify any medical evidence that the ALJ failed to consider or improperly rejected which would support her alleged inability to work at least one day a month. Furthermore, a review of the record does not reveal any support for Allen's argument. Treating physician Dr. Reddy and consultative examiner Dr. Waligura were the only physicians to assess Allen's ability to work. R. at 242-43, 286-93. Neither physician assessed any limitation in Allen's ability to maintain consistent work attendance. *Id.*

Dr. Waligura made no finding that Allen's impairments, including her migraines, limited her ability to work. R. at 286-93. The only limitation that Dr. Waligura assessed in regards to Allen's migraines was that she should avoid exposure to noise. R. at 292. The ALJ adopted Dr. Waligura's assessment in regards to Allen's headaches by limiting her representative occupations to those in which she could "avoid exposure to . . . loud noises." R. at 12.

Dr. Reddy's assessment also does not support Allen's claim that she is unable to maintain consistent attendance. On September 18, 2007, Dr. Reddy opined that Allen would be temporarily disabled from September 2007 until March 2008, a period of six months. R. at 243. The ALJ noted in her decision that "one treating source certified the claimant as temporarily disabled in connection with a welfare claim, but that the term of such disability was expressly less than twelve months." R. at 14. A claimant must show that her impairments prevented her from working for twelve consecutive months in order to be found disabled under the Act[5].

---

[5] To qualify for DIB under Title II of the Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period." *Kangas*, 823 F.2d at 777; 42 U.S.C. § 423(d)(1) (1982). Similarly, to qualify for SSI, the claimant must show "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or

*Barnhart*, 535 U.S. at 212. Furthermore, a medical statement or opinion expressed by a treating source on a matter reserved for the Commissioner, such as a statement that the claimant is "disabled" or "unable to work," is not dispositive or controlling. *Adorno*, 40 F.3d at 47-48, citing *Wright v. Sullivan*, 900 F.2d 675, 683 (3d Cir.1990). Therefore, Dr. Reddy's assessment that Allen was disabled for a period of six months was not controlling and did not support a finding that she was disabled under the Act.

Allen also mistakenly relies on *Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352 (3d Cir. 2008), in support of her argument that the ALJ failed to incorporate limitations from her migraines in her RFC assessment. Doc. No. 13, 12-13. Allen's reliance on *Brownawell* is misplaced because the ALJ did not reject the opinion of Allen's treating physician, Dr. Reddy. *Brownawell*, 554 F.3d at 352. The ALJ could not have erred in rejecting any of Dr. Reddy's assessment because it did not contain any specific functional limitations caused by Allen's migraines. R. at 242-43. Furthermore, as noted above, Dr. Reddy's opinion that Allen was temporarily disabled was not controlling or dispositive. *Adorno*, 40 F.3d at 47-48.

The ALJ's rejection of the severity of Allen's migraines is supported by her citation to objective medical findings and medical opinions. R. at 14-15. Diagnostic tests from Allen's record support the ALJ's determination that Allen's headaches were not disabling. R. at 213, 222, 415, 445. The ALJ referenced Allen's MRI and MRA results which "show no structural abnormality that would account for the claimant's headaches." R. at 14.

---

mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1383c(a)(3)(A).

The ALJ also supported her decision by determining that Allen's migraines were treatable with medications. She noted that in January 2008, Allen tolerated medication well and obtained good symptom relief. R. at 14. The ALJ also noted that there was no indication that the medications resulted in a loss of blood pressure or that Allen suffered any untoward consequences. *Id.* Additionally, the ALJ concluded that Allen's medications were helpful in controlling her migraines because "on at least one occasion when a migraine brought her to the emergency room, the claimant had no medications." *Id.* It was also noted that the reports of Dr. Kaniecki, who specialized in treatment of migraine and other headaches, strongly suggested that Allen's symptoms were controllable via medication. *Id.* Furthermore, the ALJ addressed Allen's reports of as many as ten migraines a week when she was treated at UPMC, but determined that "these records make it clear that she improved rapidly with treatment." R. at 14.

Allen contends that "her medical records document at least 21 days of medically-documented, debilitating migraine headaches, with 12 of those days being spent in the hospital." Doc. No. 13, 17. However, Allen's hospitalizations for her migraines were also considered by the ALJ and do not demonstrate that she would miss at least one day of work a month. The ALJ noted that there was evidence of "a spell in 2008 during which [Allen] required and received particularly intensive evaluation and treatment for migraines." R. at 14. However, the record documented that following both inpatient and outpatient treatment, Allen was "noted to be doing better on an increased dose of Topamax." *Id.* The record does not include any evidence of that Allen sought or received treatment for severe, incapacitating headaches after November 2008. Indeed, as noted, by December 2008, Allen's migraines were reported to be stable. R. at 14. The ALJ determined finding that "claimant's migraines are amenable to treatment, and the ALJ

finds that with proper treatment the claimant's headaches would not prevent her from working within the above limitations." *Id.*

Allen also attacks the ALJ's conclusion that there was no sound reason that she refused to take the appropriate medications. Doc. No. 13, 13. In her decision, the ALJ noted that Allen "allege[d] being unable to tolerate the 'triptan' class of medications that are the most common specific treatment for migration." R. at 14. Allen argues that this statement demonstrates that the ALJ refused to consider evidence of her migraines. Doc. No. 13, 14. However, the ALJ specifically discussed Allen's migraine medications, including triptans such as Imitrex and non-triptans. R. at 14. Allen was last noted to be taking triptans in January 2008. R. at 256. Except for a short period of time, Allen's migraines stabilized after she stopped taking triptans. R. at 422. There is evidence that Allen's headaches were regulated with non-triptan medications including Topamax[6], Percocet, Labelaiol, Celexa, Procardia, Dilaudid, and Ativan. Indeed, the ALJ noted that Allen was "noted to be doing better on an increased dosage of Topamax." R. at 14. Notably, Allen's only hospital admission for migraines after she was prescribed Topamax, in November 2008, was at a time she admitted that she was not taking any medications. R. at 444, 452. Furthermore, Allen did not seek medical treatment for her migraines from December 2008 through the date of the ALJ's decision. R. at 420. Because of the ALJ's emphasis that Topamax, a non-triptan, controlled Allen's migraines, her conclusion that Allen had "no sound reason for [her] refusal to take appropriate medicine as prescribed" focused on Allen's refusal to take prescribed medications, not specifically triptans. *Id.* Therefore, despite Allen's contention

---

[6] Topamax (Topiramate) is "used to prevent migraine headaches, but not to relieve the pain of migraine headaches when they occur. Topiramate is in a class of medications called anticonvulsants. It works by decreasing abnormal excitement in the brain." Topiramate, U.S. National Library of Medicine, National Institutes of Health, (October 7, 2010), http://www.ncbi.nlm.nih.gov/pubmedhealth/ PMH0000998.

otherwise, based on her review of the complete record, the ALJ's hypothetical question to the VE and her RFC assessment was based on substantial evidence.

In short, Allen's claim that her migraines would force her to miss at least one day of work a month was not demonstrated by the evidence in the record. The ALJ properly explained her decision and included those limitations which were credibly established by the record in her hypothetical question to the VE as well as her RFC assessment. Therefore, the ALJ's decision is supported by substantial evidence. *Podedworny*, 745 F.2d at 218.

## VII. Conclusion

The ALJ's decision denying Allen's applications for DIB and SSI benefits is "supported by substantial evidence" within the meaning of 42 U.S.C. § 405(g) because there is such relevant evidence as a reasonable mind might accept as adequate. *Fargnoli*, 247 F.3d at 38. Specifically, the ALJ thoroughly addressed Allen's migraines and resulting limitations in her decision and included in Allen's RFC those physical and mental limitations which were supported by the record. R. at 9-12.

Accordingly, Allen's Motion for Summary Judgment (Doc. No. 12) will be denied and the Commissioner's Motion for Summary Judgment (Doc. No. 14) will be granted. Pursuant to the fourth sentence of 42 U.S.C. §405(g), the Commissioner's decision will be affirmed.

/s/ Alan N. Bloch
United States District Judge

Dated: January 3, 2011

Cc: All counsel of record by Notice of Electronic Filing